**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

**v.**                                                    **Criminal Case No: 1:14-cr-91**

**JULIE ANNETTE BAILES,**
        **Defendant.**

**OPINION/REPORT AND RECOMMENDATION**
**REGARDING PLEA OF GUILTY IN FELONY CASE**

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Julie Annette Bailes, in person and by counsel, Craig Erhard, appeared before me on January 22, 2015. The Government appeared by Zelda Wesley, its Assistant United States Attorney. The Court determined that Defendant would enter a plea of "Guilty" to a one-count Information.

The Court proceeded with the Rule 11 proceeding by placing Defendant under oath.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant confirmed the same. The Court asked counsel for the Government to summarize the written plea agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written plea agreement filed.

The Court then inquired whether Defendant was a citizen of the United States. Defendant responded that she was a citizen. The undersigned asked Defendant whether she understood that if she were not a citizen of the United States, by pleading guilty to a felony charge she would be subject to

deportation at the conclusion of any sentence; that she would be denied future entry into the United States; and that she would be denied citizenship if she ever applied for it. Defendant stated that she understood.

Thereupon, the Court inquired of Defendant concerning her understanding of her right to have an Article III Judge hear and accept the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that she voluntarily waived her right to have an Article III Judge hear her plea and voluntarily consented to the undersigned Magistrate Judge hearing her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before the United States Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Julie Annette Bailes, after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent filed.

The undersigned Magistrate Judge inquired of Defendant and her counsel relative to Defendant's knowledge and understanding of her constitutional right to proceed by Indictment and the voluntariness of her Consent to Proceed by Information and of her Waiver of her right to proceed by Indictment. Defendant and her counsel then verbally acknowledged their understanding and Defendant, under oath,

acknowledged her voluntary waiver of her right to proceed by Indictment and her agreement to voluntarily proceed by Information. Defendant and her counsel executed a written Waiver of Indictment. The undersigned Magistrate Judge then received and **ORDERED** the Waiver of Indictment and the Information filed and made a part of the record herein.

The undersigned then reviewed with Defendant the Information, including the elements the United States would have to prove at trial, charging her with making a false statement in acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) & 924(a)(2). The undersigned reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in the Information. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against her; understood that the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than ten (10) years; a fine of not more than $250,000.00, or both imprisonment and a fine; and a term of supervised release of not more than three (3) years. Defendant further understood the Court would impose a special assessment of $100.00 for the felony conviction payable before the date of sentencing and understood that the Court may require her to pay the costs of her incarceration and supervised release.

The Court then inquired of Defendant regarding her understanding of her conditional waiver of appellate rights as contained in the written plea agreement, as follows:

Ct. Do you understand you have a right to appeal your conviction and your sentence to the Fourth Circuit Court of Appeals provided that you give notice of intent to appeal within 14 days of sentencing?

Def. Yes.

Ct. Do you understand that you may be able to collaterally attack or challenge the sentence and how it's being carried out by filing a motion under 28 U.S.C. 2255, 2241, or a whole host of other federal statutes?

Def. Yes.

Ct. Do you understand that under your written plea agreement, and I'm now referring to paragraph 9(a) and 9(b), under 9(a), if you receive an actual sentence which is the same as or equal to a Guideline calculated sentence with a base offense level of 12 or lower–base offense level is the starting point for advisory sentencing–then you give up your right under 18 U.S.C. 3742 to appeal that conviction and sentence to the Fourth Circuit Court of Appeals?

Def. Yes.

Ct. Did you understand that when you signed the agreement with 9(a) in it?

Def. Yes.

Ct. Has anything changed about your understanding of that paragraph since you signed it?

Def. No.

Ct. Did you intend to give up that valuable right in accord with paragraph 9(a)?

Def. Yes.

Ct. And you discussed that fully with Mr. Erhard?

Def. Yes.

Ct. In 9(b), you also give up your right to file a writ of habeas corpus type motion under 28 U.S.C. 2255 and any other of those habeas statutes–it's not written in there, but it's included in there–

Def. Yes.

Ct. Under the same conditions as you're giving up your right to appeal to the Fourth Circuit, do you

understand that completely?

Def. Yes.

Ct. The only thing you're reserving to yourself is, if after today, you discover some evidence of prosecutorial misconduct or you discover some evidence of ineffective assistance of counsel. Then you can raise that. Do you understand that?

Def. Yes.

Ct. Do you know of any prosecutorial misconduct as you sit here today?

Def. No.

Ct. Do you know of any ineffective assistance of counsel as you sit here today?

Def. No.

Ct. So, it's clear to you that if you don't know about it today, you'd have to discover it after today–

Def. Yes.

Ct. In order to bring it.

Def. Yes.

Upon consideration of all which, the Court finds Defendant understood her appellate rights and knowingly and voluntarily waived those rights pursuant to the condition in the plea agreement.

Defendant thereafter stated in open court she understood and agreed with the terms of the written plea agreement as summarized by the Assistant United States Attorney during the hearing, and that it contained the whole of her agreement with the Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement. The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement signed by her and determined the entry into said written

plea agreement was both knowledgeable and voluntary on the part of Defendant. The Court further determined that Defendant was competent to proceed with the Rule 11 plea hearing.

The undersigned Magistrate Judge inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in the Information, the undersigned Magistrate Judge would write the subject Report and Recommendation and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in the Information and make a determination as to whether to accept or reject any recommendation or the stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulations contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant and her counsel each acknowledged their understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that,

even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not have a right to withdraw her guilty plea. Defendant further stated her attorney showed her how the advisory guideline chart worked but did not promise her any specific sentence at the time of sentencing. Defendant stated that she understood her attorney could not predict or promise her what actual sentence she would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The Court heard the testimony of Special Agent Ken Grace of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). SA Grace testified that on October 8, 2012, he was notified of a potential straw purchase by employees of the Cashland Pawn, a federal firearms licensee, in Morgantown, West Virginia, within the Northern District of West Virginia. SA Grace obtained video surveillance footage from Cashland Pawn as well as the BP station and Marris Keg Shop, businesses in the vicinity. In the video footage from Cashland Pawn, SA Grace saw two (2) African-American males enter Cashland. They asked about how to purchase a firearm, and the clerk told them they needed to have photo Ids and be residents of West Virginia. The clerk overheard one of the males, on a phone call, state that he needed to go back to Pennsylvania soon. The males left the store, turned left, and walked away down the street. Shortly thereafter, Defendant came into Cashland from the same direction the males had left. She indicated that she was interested in purchasing a .40-caliber handgun and that she had $600.00 in cash. Eventually, Defendant decided to purchase a new Glock. The clerk gave her the ATF 4473 form to complete. While Defendant was completing that form, the two (2) males returned to the store. Defendant and the males acted like they did not know one another. When Defendant's background check

came back as delayed, she asked for the money back and gave the clerk a phone number so that she could be contacted later when the check was completed. Defendant left, and the males left shortly thereafter. The owner of Cashland then drove up the street, where he saw Defendant and the two males together at the BP station.

On October 10, 2012, agents had Cashland employees call Defendant to tell her that she could pick up the firearm. Once the firearm was transferred to Defendant, SA Grace approached her, and she agreed to speak to him. He asked her about the males; she first said that they were friends, but later said that she did not know them very well. On several occasions she denied that the purchase was a straw purchase. Defendant said that the $600.00 was her money. When asked about her residence, Defendant indicated that she was living at the District Apartments in Morgantown. SA Grace pointed out that such residence was different from the one listed on the 4473 form; Defendant responded that she had to use her old address so that it matched her ID. Defendant also told SA Grace that she did not want it to seem like she knew the two men when she was making the purchase, and ultimately admitted that one of the males had given her the $600.00. SA Grace also reviewed footage from the BP and Marris Keg Store from the morning of October 8, 2012. In that footage, he saw the two males at the BP station. Defendant then entered the station. Subsequently, one of the males went to an ATM nearby and made two (2) withdrawals of $200.00 each. He then made a withdrawal of $200.00 from the ATM at the BP. A review of Defendant's 4473 form revealed that she made false statements when asked for her current address and whether she was the actual purchaser of the firearm.

Defendant stated she heard, understood, and agreed with Special Agent Grace's testimony. From said testimony, the undersigned Magistrate Judge concludes the offense charged in the Information is supported by an independent basis in fact concerning each of the essential elements of such offense.

Defendant, Julie Annette Bailes, with the consent of her counsel, Craig Erhard, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in the Information.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing her plea; Defendant understood her right to have her charges presented in an Indictment and knowingly, freely and voluntarily elected to proceed by Information; Defendant understood the charges against her; Defendant understood the consequences of her plea of guilty, including the statutory maximum sentence; Defendant made a knowing and voluntary plea of guilty to the Information; and Defendant's plea is independently supported by Special Agent Grace's testimony, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore recommends Defendant's plea of guilty to the charge contained in the one-count Information herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

The Court noted that Defendant had appeared via a writ because she is currently in the custody of the State of West Virginia; however, the Government was not seeking detention should she be released from State custody while further proceedings in this matter are pending. Accordingly, Defendant is remanded to the custody of the State of West Virginia. Should she be released from State custody while federal proceedings are still pending, she shall then be subject to the Order Setting Conditions of Release

entered in this matter.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 22nd day of January, 2015.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE